Miller vs. Douville & Gallagher.

## No. 11,102.

### W. W. MILLER VS. DOUVILLE & GALLAGHER.

If he who proposes should, before consent is given by the promisee, change his intention, the concurrence of the two wills is wanting and there is no contract.

A mere proposal to sell may be revoked at any time before acceptance.

A condition dependent upon the will of the party to whom an offer to sell immovable property is made should be reduced to writing to secure its binding effect.

APPEAL from the Civil District Court for the Parish of Orleans. *Righter, J.*

*Harry H. Hall* for Plaintiff and Appellant:

1. A written promise to sell amounts to a sale when there exists reciprocal consent as to the thing and price. O. O. 2462; 12 R. 474; 11 R. 349; 5 An. 656; 6 An. 26; 7 An. 71; 10 An. 162; C. N. 1589; 34 An. 677; 15 An. 583; 28 An. 34.
2. A written promise to sell real property is valid and may be enforced although not signed by the obligee, and consent may be shown *aliunde.* 2 La. 491; 11 M. 217; 3 N. S. 583; 8 L. 207; 11 La. 247.
3. A conditional promise to sell real property gives no title, but simply, when the condition is fulfilled, a right of action for a specific performance or damages. 10 An. 150; 13 An. 362; Art. O. C. 1809.
4. A default is not subject to the formalities required by the Code of Practice, for tender, nor to any particular form. It suffices for the creditor to announce a readiness to perform his part and to demand a like performance from the debtor. 3 La. 385; C. O. 1911; 6 La. 184; 3 La, 99; 27 An. 111; 26 An. 453.
5. A refusal to accept dispenses one from making a tender. Civil Code, 1932; 4 La. 40; 13 An. 203.

*J. L. Bradford* and *Calhoun Fluker* for Defendants and Appellees:

The vague written statement of the price and terms upon which one would be willing to sell another an interest in a tract of land can not, by simple acceptance, be transmuted into a contract of sale where the writing does not disclose a contractual intent. O. C. 1945.

A proposition, to become an agreement having the effect of law upon the parties,. must show mutuality of engagement and not a mere understanding on one side.

It must be consented to and accepted by the person to whom it is made, and such acceptance must be unqualified, absolute, and conformable to the offer. Any condition or limitation in the acceptance gives him who made the offer the right to withdraw it. C. C. 1805; 1 La. 188, 190; 6 R. 97; 11 An. 649; 21 An. 620.

If he who proposes, before that consent or acceptance is given, change his intentions on the subject, the concurrence of the two wills is wanting and there is no contract. C. C. 1800.

The party proposing shall be presumed to continue in the intention which h's proposal expressed, if, on receiving the unqualified assent of him to whom the-- proposition is made, he do not signify the change of his intention. C. C. 1801.

Where it is evident that the parties contemplated a formal act of sale, the contract is incomplete until the deed has been actually drawn and signed by both parties. Until this is done either has the right to withdraw from his proposition, the · only effect being that the parties must be placed as they were before. C. C. Pothier Obs.; 3 M. 349. 518, 578; 5 M. 677; 4 La. 80; 24 An. 435; 28 An. 33.

No liabilities for damages for violation of contract can be incurred by one who · does what he has a legal right to do.

---

The opinion of the court was delivered by

BREAUX, J.    Plaintiff sued the defendants to recover the sum of $10,700, and alleges that in April, 1891, he entered into negotiations . with the defendants for the purchase from them of an undivided one-half interest in 14,800 acres of land in Mississippi, known as Kiel· lands; that said negotiations resulted in an offer made by defendants . to petitioner on the 28th day of April, 1891, of the one-half interest for $7800, upon the condition that he should at once examine the · lands and be satisfied with them; that this proposal was accepted and defendants notified on the 29th day of April, 1891, that petitioner would at once proceed to the examination with the defendants as . proposed; that on the 29th of April he was by defendants requested to defer the examination, for their own convenience, until May 4, 1891.    The defendants having declined to accompany plaintiff he examined the lands nevertheless, and was, he says, satisfied with them. .

On the 7th day of May he notified the defendants, in writing, that he accepted the proposal, and he requested that the deed of sale be prepared for signature.

The defendants denied that there was any valid or binding contract or obligation to sell· the lands.

Plaintiff avers that the defendants sold the undivided one-half interest for $18,500, and that he is entitled to the difference between that price obtained and the price at which defendants offered to sell، in the instrument declared upon, which reads:

"NEW ORLEANS, La., April 30, 1891.

" Statement of terms and conditions on which we will sell a one-half interest in 14,800 acres which we have recently purchased in lower Mississippi, known as the Kiel lands—will sell one-half interest for $7800, $1300 to be paid in cash, $1000 to be paid September 1, 1891, and balance on or before next two years at 8 per cent. interest on deferred payments. This proposition made to W. W. Miller this 30th day of April, 1891.

"DOUVILLE & GALLAGHER."

A deed of sale, by Mrs. Kiel as vendor, to the defendants, is in evidence, of 14,800 acres, with warranty, and another deed of 1000 acres, the title to which was of doubtful validity, and for which they had a quit claim.

The defendants requested N. R. Smith, an acquaintance, to find a purchaser for an interest in one-third or one-half of these lands, at the price of $1 per acre.

Smith thereupon sought to interest the plaintiff in making the purchase. The terms made to Smith were renewed by telegram and letter to him.

The plaintiff came to New Orleans and the defendants gave him a description (verbally) of the lands in question and handed him a plan of the lands.

At this time the instrument copied above was signed by the defendants.

On May 5, 1891, a telegram was sent, of which the following is a copy:

"NEW ORLEANS, May 5, 1891.

N. R. Smith—Have customer entire Wolf river lands at price, could not recommend to you. Will make your expenses and your friends'."

It was signed by the defendants.

The witnesses understood this dispatch as a notice of intention to withdraw the offer.

On that day plaintiff came to the city and repaired to defendant's office. He was there asked if he had received the dispatch—the one just copied—to which he replied affirmatively, and expressed his determination to go and examine the lands.

The defendants stated to plaintiff that the lands were sold to other parties.

On returning, after he had examined the lands, he again met Douville, a member of the defendant firm, who said to him that he could not have the lands.

Subsequently, on the same day, the plaintiff returned to defendant's office and handed him a letter, of which the following is a copy:

"NEW ORLEANS, May 7, 1891.

"*Messrs. Douville & Gallagher, Room 5, 20 St. Charles Street:* GENTLEMEN—In conformity with our agreement, I came to the city on Tuesday, the 5th of May, leaving that evening to visit the lands upon Wolf river. I returned to the city this morning, satisfied with my examination. I now accept your proposal of April 30, to sell to me one-half interest in 14,800 acres in lower Mississippi, known as the Kiel lands, for $7800, $1300 to be paid in cash, $1000 September 1, 1891, and the balance on or before one or two years, at 8 per cent. interest on deferred payments.

"Please have deeds prepared at once, as I desire to leave the city as soon as possible, and am prepared to make the cash payment.

"Yours truly, "W. W. MILLER."

Prior to the receipt of this letter the defendants had refused to execute a deed of the lands to plaintiff.

The duty of the court becomes one of interpretation of the instrument which the plaintiff argues evinces a complete and binding obligation to sell, and he avers that there existed a reciprocal consent as to the thing and the price; also that a written promise to sell the property is valid and may be enforced, although not signed by the obligee.

He adds: Conditional promise to sell gives no title, but simply, when the condition is fulfilled, a right of action for a specific performance or damages; and that there is *no question of parol testimony, as the thing, price and final consent are all in writing.*

The consent was not reciprocal in this, that no terms were stipulated.

The defendants offered to sell their lands to the plaintiff without limiting the time for its acceptance.

They recalled the offer before the plaintiff had expressed his willingness to buy.

There was no agreement between the parties.

When the plaintiff expressed his willingness to accept, the offer had been withdrawn.

This court has decided in several cases that a written promise to sell real property is valid and may be enforced, although not signed by the obligee.

We have examined each of the cases to which counsel for plaintiff invites our attention.

The principle is maintained by them that a written promise to sell or convey real property is valid notwithstanding there is no signing, or written assent by the promisee and that proof of that assent may be proved by evidence *aliunde*.

The question of withdrawal of the offer prior to its acceptance was not an issue in any of these cases.

The offer can be withdrawn at any time before acceptance.

Without mutual assent there can not be a sale.

A promise to sell implies an offer, an accepted offer, while pollicitation is an offer not accepted.

The offer, so long as it remains open, may be accepted or rejected by the party to whom or be withdrawn by the party by whom it was made.    119 U. S. 151.

In Peet vs. Overton, 7 An. 71, the agreement was absolutely binding upon the defendant; as to him it amounted to a sale, *although sixty days was given* to Mrs. Bemiss to accept and comply with the conditions.

A proposal may be revoked at any time before acceptance.    111 Am. and Eng. Encyc., p. 860 (note).

The article of the Civil Code on the subject conveys but one meaning—if the promiser before consent changes his intention, the concurrence of the two wills is wanting, and there is no contract." Art. 1800.

We construe these authorities in their application to a written offer to sell real estate in which no term is stated.

No other question on the point now under discussion arises for our decision, such as the right *vel non* to withdraw the offer when time has been given or after its acceptance.

As to the offer without term, until there is acceptance "the negotiations of the parties amount to nothing more than proposals and counter proposals."    111 Am. and Eng. Encyc., p. 852.

It is contended by plaintiff that there was a conditional promise to sell to him, and that he fulfilled the condition, which gives him a right of action for a specific performance or damages.

City of New Orleans vs. Pohlman.

He has elected to sue for damages.

Whatever condition there may have been depended, says plaintiff in effect, on his will.

The record does not disclose that any right was reserved, in due form and expressly, to examine the land or to secure any delay whatever before accepting.

Concerning a conditional promise to sell and " condition fulfilled," we are referred by plaintiff's counsel to Knox vs. Payne & Harrison, as an opinion in point.

We have examined the transcript of that case, which is part of the archives of the court. It discovers no analogy, except that there was a promise to sell on part of White, to the plaintiff Knox. It was reduced to writing and clearly expressed in every respect.

The promisee was placed in possession of the property, and had paid the price to the promisor. Says the court in that case:

" Whether he was obliged to do so or not to do by the fulfilment of the suspensive condition on the part of plaintiff does not concern us to decide." 13 An. 861.

We have not discovered great similarity in the other case referred to, that of Peck vs. Bemiss, 10 An. 162.

The difference is at once apparent by the following:

" Overton engaged himself to sell the land to ?Peck at a future time, and Peck engaged himself to purchase it, when possession should be given on the terms of cash and credit *designated in the instrument.*"

Plaintiff has not secured any right designated in the instrument.

He delayed acceptance without binding conditions on the part of the promisors.

The court can not grant him relief.

Judgment affirmed at appellant's costs.